```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

WEBADVISO, J. TAIKWOK YUNG,         :

                Plaintiff,          :

        - against -                 :      MEMORANDUM DECISION

BANK OF AMERICA CORP.,              :      09 Civ. 5769 (DC)
MERRILL LYNCH,
                                    :
                Defendants.
                                    :
- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/31/09

APPEARANCES:       J. TAIKWOK YUNG
                   556 East 88th Street
                   Brooklyn, NY  11236
                     Plaintiff Pro Se

                   CONDON & FORSYTH LLP
                        By:  John Maggio, Esq.
                   7 Times Square
                   New York, NY  10036

                        - and -

                   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
                        By:  Charles A. Burke, Esq.
                             Jacob S. Wharton, Esq.
                   One West Fourth Street
                   Winston-Salem, NC  27101
                     Attorneys for Defendants

**CHIN, District Judge**

       In this case, plaintiff J. Taikwok Yung, suing herein as "Webadviso, J. Taikwok Yung," seeks a judgment declaring that his use of the domain names "bofaml.com" and "mlbofa.com" does not violate the rights of defendants Bank of America Corporation ("Bank of America") and Merrill Lynch & Co., Inc. ("Merrill Lynch"), sued herein, respectively, as "Bank of America Corp." and "Merrill Lynch."  Defendants assert counterclaims under federal and state law.

The parties appeared before the Court on July 2, 2009, in connection with defendants' application for a temporary restraining order ("TRO") and an order to show cause for a preliminary injunction. After hearing from both sides, I granted defendants' application for a TRO and issued a written order the same day directing the transfer of the registration of the two domain names to Bank of America pending a preliminary injunction hearing.

A preliminary injunction hearing was held on July 15, 2009. Plaintiff did not appear, despite having been provided with notice of the hearing. (7/15/09 Tr. at 2). Defendants appeared, with counsel. Defense counsel reported that the servicing company had transferred ownership of the domain names to Bank of America. (Id. at 4). Based on what I had heard at both the July 2 and July 15, 2009, hearings and what I had read in the parties' papers, I granted defendants' motion for a preliminary injunction. (Id. at 5). I asked defendants to submit a proposed preliminary injunction order. They thereafter submitted a proposed preliminary injunction order, an order to show cause for a permanent injunction and judgment for defendants, and a proposed memorandum decision.

The following constitute my findings of fact and conclusions of law with respect to defendants' motion for a preliminary injunction.

## FINDINGS OF FACT

1. **The Parties**

Bank of America, one of the world's largest financial institutions, has used for many years the trademark BANK OF AMERICA and related marks in connection with a wide range of financial services.  (West Aff. ¶¶ 2, 3 & Ex. 1).  "B of A" is a common abbreviation for "Bank of America," and Bank of America and its predecessors have used the mark B OF A since at least as early as 1954.  Bank of America registered the mark B OF A in 1968 for use in banking and financial services.  Bank of America also owns the domain names "bankofamerica.com" and "bofa.com" and has used these names in connection with its business.  (Id. ¶¶ 4, 5, 7 & Exs. 2, 3, 4).

Merrill Lynch, one of the world's leading financial companies, has used for many years the trademark MERRILL LYNCH and related marks in connection with a wide range of financial services.  (Id. ¶¶ 8, 9, 10 & Ex. 5).  "ML" is a common abbreviation for "Merrill Lynch," and Merrill Lynch owns some sixteen federal registrations for trademarks containing the component ML in conjunction with other words and designs. Merrill Lynch also owns the domain names "merrilllynch.com" and "ml.com," and has used these names in connection with its business.  (Id. ¶¶ 11, 13 & Exs. 6, 9).

Yung apparently does business under the name "Webadviso."  Webadviso is a self-described "domainer" that seeks to "acquire high value domain names and park them with domain

parking service providers to generate pay-per-click revenue" or to build websites. (Compl. ¶ [3.]).

Webadviso has a history of registering domain names that include well-known trademarks, including combinations of marks of financial institutions that have considered mergers, including the following:

>     wachoviaciti.com
>     wachoviamorganstanley.com
>     wamuciti.com
>     wamuwellsfargo.com
>     lehmanhsbc.com
>     citigroupwachovia.com
>     lehmanbarclayscapital.com

(West Aff. ¶ 23 & Ex. 23). As of June 26, 2009, Webadviso had registered some 180 domain names. (Ferrario Aff. ¶ 18 & Ex. 11).

2.  **The Merger**

On September 14, 2008, the media reported that Bank of America had agreed to acquire Merrill Lynch. (West Aff. ¶ 14 & Ex. 10).

3.  **Webadviso's Registration of the Domain Names in Question**

On September 14, 2008, the same day that the media reported Bank of America's acquisition of Merrill Lynch, Webadviso registered the domain names "BOFAML.COM" and "MLBOFA.COM" through GoDaddy.com, a domain name registration company. (Id. ¶ 15 & Ex. 11).

Webadviso then created websites under both domain names. The "bofaml.com" website contained a heading "Inquire About This Domain," which directed visitors to the site to a link where they could make an offer for the domain name. The website

also stated: "Domain For Sale: sporting202@yahoo.com." The "mlbofa.com" website also noted that it was for sale. Content on the websites rotated and changed from time to time, and both websites at times displayed information relating to financial services. Both websites included "link farms" that provided rotating links to other websites that offered products and services; when consumers clicked on these links to purchase products or services, Webadviso would be compensated. (Id. ¶¶ 16, 17 & Exs. 12-15; Compl. ¶ [3.]; 7/10/09 Yung Aff. ¶ 16).

4.  **The Arbitration Proceedings**

In or about February 2009, Bank of America and Merrill Lynch learned that Webadviso had registered the domain name "bofaml.com" and promptly filed a complaint under the Uniform Domain Name Dispute Resolution Policy with the National Arbitration Forum (the "NAF"). (West Aff. ¶ 25; Ferrario Aff. ¶ 3 & Ex. 1). Counsel for defendants contact Yung in an effort to resolve the matter, and Yung responded by email dated March 27, 2009, as follows:

> Look, I am a business person, and I am a fan
> of Ken Lewis, CEO. We can settle this if you
> make a decent offer. This is a quality
> domain name and if its [sic] auctioned off in
> the open market it would fetch near 7
> figures.

(Ferrario Aff. ¶¶ 4, 5 & Ex. 2).

On or about March 28, 2009, defendants learned that Webadviso had also registered the domain names "mlbofa.com," "bofamerrill.com," and "merrillbofa.com." Thereafter, they

amended their NAF complaint to add these names. (West Aff. ¶ 26; Ferrario Aff. ¶¶ 6, 7 & Ex. 3). Further efforts by defendants' counsel to resolve the matter failed. (Ferrario Aff. ¶¶ 8, 9).

On May 15, 2009, the NAF panel hearing the matter ruled that the domain names "bofaml.com" and "mlbofa.com" were confusingly similar to Bank of America's B OF A trademark, Webadviso had no right or legitimate interest in the domain names, and Webadviso registered and was using the domain names in bad faith. The panel ordered the transfer of the domain names to Bank of America. (Id. ¶ 11 & Ex. 5).

### DISCUSSION and CONCLUSIONS OF LAW

A. **Applicable Law**

   1. **Standard for Issuance of Preliminary Injunction**

A preliminary injunction is "an extraordinary and drastic remedy that will not be granted absent a clear showing that the [moving party] has met its burden of proof." Christie-Spencer Corp. v. Hausman Realty Co., 118 F. Supp. 2d 408, 417 (S.D.N.Y. 2000) (citations omitted). To prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a threat of irreparable injury and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation, as well as a balance of hardships tipping decidedly in the moving party's favor. See, e.g., Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir. 1997). A

party seeking a preliminary injunction that would alter the status quo by commanding a "positive act" must demonstrate a clear or substantial likelihood of success. Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995).

### 2. The Cybersquatting Statute

The Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d), was passed to protect consumers and businesses from "cybersquatting" -- "the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 493 (2d Cir. 2000); see Hamptons Locations, Inc. v. Rubens, 640 F. Supp. 2d 208, 213 (E.D.N.Y. 2009).

The elements of a claim under the ACPA are as follows:

> (1) Defendants registered, trafficked in or used a domain name; (2) that was identical or confusingly similar to Plaintiffs' mark; (3) Plaintiffs' mark, at the time Defendants registered their domain name, was distinctive; and (4) Defendants committed these acts with a bad faith intent to profit from Plaintiffs' mark.

Hamptons Locations, 640 F. Supp. 2d at 214; see Sporty's Farm, 202 F.3d at 497-99; 15 U.S.C. § 1125(d)(1)(A).

### B. Application

Here, defendants have clearly shown both the threat of irreparable harm and the likelihood of success on the merits.

### 1. Irreparable Harm

In cybersquatting cases, "irreparable harm may be presumed where there is a likelihood of success on the merits."

-7-

Vogster Entm't, LLC v. Mostovoy, No. 09 Civ. 1036, 2009 WL 691215, at *6 (E.D.N.Y. Mar. 16, 2009) (citation omitted). As discussed below, defendants have shown a likelihood of success on their cybersquatting claim.

Moreover, putting aside the presumption of harm, defendants have shown that they will suffer irreparable harm if Webadviso is able to use and control the "bofaml.com" and "mlbofa.com" domain names. Consumers may look for information on the Internet regarding the merger of Bank of America and Merrill Lynch by using some combination of the trademarks of the two names, and, in the absence of a preliminary injunction, they may be mistakenly directed instead to Webadviso's website. In addition, Bank of America and Merrill Lynch may want to use the domain names for bona fide business matters concerning their combined operations, and they should have the ability to do so. Defendants' loss of control over the domain names could cause them the irreparable loss of good will.

  **2.** **Likelihood of Success**

Defendants have shown a clear and substantial likelihood of success on the merits of their cybersquatting claim.

Webadviso registered the domain names "bofaml.com" and "mlbofa.com" on September 14, 2008, through GoDaddy.com.

Webadviso's domain names are confusingly similar to defendants' marks, particularly in view of the timing. See Omega S.A. v. Omega Eng'g, Inc., 228 F. Supp. 2d 112, 127 (D. Conn.

2002) (citing J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 25:78 (4th ed. 2002)). Webadviso combined defendants' two marks the same day the merger was announced; this surely created confusion.

Bank of America's B OF A mark is a strong and distinctive mark. It is federally registered and thus is presumed valid and protectable. <u>See</u> <u>Sports Auth., Inc. v. Prime Hospitality Corp.</u>, 89 F.3d 955, 960 (2d Cir. 1996). It has been used continuously for many years, on a nationwide basis, in a variety of retail channels, and has become a famous and inherently distinctive mark. <u>See</u> <u>Sporty's Farm</u>, 202 F.3d at 497. Merrill Lynch's ML mark is also strong and distinctive, although not to the same extent as the B OF A mark. Merrill Lynch has used the ML mark in connection with its services for a number of years.

Yung, acting through Webadviso, acted in bad faith, with the intent to profit from defendants' marks. He registered the domain names the day the merger was announced. Neither he nor Webadviso had previously used any iterations of "bofa" or "ml" in their businesses. He registered the domain names knowing he had no rights to the marks "bofa" or "ml," and without any legitimate purpose in mind for the ownership and control of the domain names. Instead, he did so solely to "cash in" on the merger. He admits that he is a "domainer" who seeks to register domain names incorporating well-known marks with the hope that he can sell the domain names back to the trademark owners. As soon

as he registered the domain names here, he offered them for sale. When he was contacted by a representative of defendants, Yung suggested that the "bofa.com" domain name, by itself, was worth "near 7 figures." Clearly, Yung was seeking to profit by trading on the goodwill of defendants' marks.

Notably, the arbitration panel in the NAF proceeding ruled against Yung and ordered the transfer of the domain names to Bank of America.

Yung did not appear at the July 15, 2009, hearing, but he has submitted two lengthy sets of opposition papers: an affirmation in opposition to the preliminary injunction motion and a "Supplemental to Plaintiff's Affirmation in Opposition to Motion," both with exhibits. His arguments are meritless, if not frivolous (e.g., "Lamham [sic] Act is inapplicable because it deals with brands like Coca Cola."). (Pl. Aff. in Opp. ¶ 14). Many of Yung's statements are wholly irrelevant (e.g., "Plaintiff qualified to attending [sic] Stuyvesant H.S. but choose [sic] to attend the prestigious specialized Brooklyn Tech H.S. for locational reasons.") (id. ¶ 18), and others are simply bizarre (e.g., "The court have [sic] to consider the increasing significance of the cultural Chinese language usage and syntactical usage here since its [sic] in the Plaintiff's opinion that now its [sic] the Chinese govt that is essentially financing nearly all the operations and payroll of the US govt through its faithful and trustful US govt bond support purchases."). (Id. ¶ 13).

Hence, I conclude that defendants are likely to be able to prove all the elements of a claim under the ACPA. Accordingly, I may order the forfeiture or cancellation of the domain names or the transfer of the domain names to the owner of the marks -- here, Bank of America.  15 U.S.C. § 1125(d)(1)(C).[1]

## CONCLUSION

As I ruled on the record on July 15, 2009, defendants' motion for a preliminary injunction is granted.  Yung, Webadviso, and their agents and representatives are enjoined from using the domain names "bofaml.com" and "mlbofa.com" and any iterations thereof during the pendency of this lawsuit.  In addition, ownership of the two domain names shall remain with Bank of America at least during the pendency of this case.

From the record before the Court, it would appear that Yung has not asserted a viable claim in his complaint and that he does not have a viable defense to defendants' counterclaims.  At the July 15th hearing, defendants stated that they did not need any discovery and expressed a desire to reach the merits quickly.  Moreover, in their papers on the preliminary injunction motion, defendants laid out their arguments.  Under all the circumstances, plaintiff is hereby ORDERED to show cause, in writing, on or before January 12, 2010, why summary judgment should not be granted against him, dismissing his complaint and

---

[1] In view of my ruling on the ACPA claim, I do not discuss defendants' trademark infringement counterclaim. If I were to reach it, the analysis would be similar to the analysis above.

awarding defendants the relief requested in their answer and counterclaims. In his opposition papers, Yung must provide whatever evidence and arguments he has to support his claims and to oppose defendants' counterclaims, and he must identify any genuine issues of material fact that he believes warrant a trial. If he takes the position that discovery is necessary, he must identify what evidence he seeks and explain how that evidence would be relevant. If Yung fails to respond on a timely basis, I will decide the question of summary judgment without his input.

      SO ORDERED.

Dated;   New York, New York
          December 31, 2009

                              DENNY CHIN
                              United States District Judge